CALEDONIA,
March,
1833.

MATTOCKS *vs.* OWEN.

A person who makes a charge on book and attempts to support it by his own oath, must answer all material questions in relation to that charge or the charge will be unsupported and disallowed.

If a party submits to an examination under the direction of an auditor or referee and testifies, it is no objection to the report that the auditor improperly required him to testify. His testimony may be considered as an admission of a fact by the party.

Where a person is illegally imprisoned, and employs the person who imprisons him to perform a service for the purpose of relieving himself from that imprisonment, the person who performs the service cannot maintain an action to recover a compensation therefor.

Any promise founded upon the consideration of compounding a felony is void.

This was an action depending in the County Court upon an appeal from a Justice of the Peace, and brought on certain notes endorsed by one William B. Eastman to the Plaintiff, amounting to $85,99, to which the defendent plead in offset his account against said Eastman, arising before notice of indorsement containing the following item: Febuary 4th 1829.—" Going to Gilmantown for you, to get your brother to help you out of difficulty, $25. The cause was referred to Benjamin F. Deming, Esq. who reported the following facts in relation to the item aforesaid which was the only matter in controversy.

The defendant having been sworn and examined in relation to the several items of his account, testified that he performed the service, named in said charge, and paid the expenses of said journey—that he was employed by said Eastman to make said journey, and that said Eastman promised to pay him therefor. The plaintiff enquired of the defendant the circumstances preceding and attending said charge and services, and particularly as to the facts hereafter stated. To which enquiry defendant objected, which objection was overruled, and the following facts appeared by the testimony and admissions by the defendant. That sometime previous to the services named in said charge, the defendnant and Doct. Adams of Barton signed a note to the Bank of Caledonia as sureties for said William B. Eastman for $600—that said Eastman afterwards absconded into the State of New York, leaving the defendant and said Adams to pay said Bank Note without any security or indemnity whatever— that by the procurement of the defendant, one of the Grand

CALEDONIA,
*April,*
1833.

Mattocks
*vs.*
Owen.

Jurors of the town of Barton made a complaint against said Eastman in writing to James May one of the Justices of the Peace for Orleans County, charging the said Eastman with having some time before feloniously stolen and carried away sundry sheep the property of some person therein named, and charging him with other small thefts —that thereupon said Justice issued his warrant to apprehend said Eastman directed to the Sheriff of said Orleans County his deputy, or either constable of said Barton, which complaint and warrant were in due and usual form of law—that said warrant was delivered to one Fisk who was then and at the time of said charge a legal Deputy, Sheriff for said Orleans County ; that the dafendant applied to the States Attorney for said Orleans County by whose advice he made application to the Governor of this State, taking a letter from said States Attorney to said Governor—that his Excellency Samuel C. Crafts, then Governor of Vermont annexed to said warrant his official letter to the Governor of the State of New York, requesting him to cause said Eastman to be apprehended and delivered over to the defendant and said Fisk who went in pursuit of said Eastman, the said Fisk being employed by the defendant. The defendant did not present to said Governor any affidavit in support of the charges contained in said complaint, nor was any affidavit made nor oath taken before any one in support of said complaint previous to the granting said official letter, nor before the arrest of said Eastman—that in pursuance of said letter from the Governor of this State, Lt. Gov. Pitcher, then acting Governor of New York issued a warrant to the Sheriff of Rensselaer County to apprehend said Eastman, and deliver him over to the defendant and said Fisk—that by virtue of said warrrant said Sheriff did at Troy in the State of New York apprehend said Eastman and deliver him to the custody of said defendant and said Fisk, who after putting him in irons, in company transported him to Cambridge in this State, where the defendant left said Eastman in custody of said Fisk and returned to his home in Barton, and from which place said Fisk transported said Eastman to said Fisk's house in Irasburgh—that late in the evening after the arrival of said Eastman at said Irasburgh

CALEDONIA,
*April,*
1833.

Mattocks
*vs.*
Owen.

the defendant and said Doct. Adams repaired to said Fisk's house where said Eastman was then held in custody. Said Adams then advised said Eastman to send for his brothers residing in Gilmanton, New Hampshire to help him out of his difficulty and to pay the sum which said Adams and the defendant had been compelled to pay the Bank or were then liable to pay as the sureties of said Eastman; to which said Eastman consented, and a letter was drawn up by said Adams and subscribed by said Eastman, directed to the brothers of said Eastman at said Gilmanton, setting forth the arrest and confinement of said Eastman, and requesting assistance of said brothers for his relief, and soliciting their assistance for the payment or securing of said Bank debt, and for the payment of the time and expenses of the defendant, and said Fisk in said journey to New York for the arrest of said Eastman; which letter was read in the defendant's hearing; and in case said brothers had so secured said claims and demands said Eastman was to be released from said Adams and the defendant, or so far as they were concerned. That under these circumstances said Eastman did request the defendant to take said letter to his brothers at Gilmanton, and promised to pay the defendant for said journey. That the defendant did perform the journey named in said charge which proved unsuccessful, said brothers of said Eastman refusing to interfere—that afterwards said Eastman was carried before Justice May on said complaint and warrant, and on trial by Jury before said Justice was convicted, and appealed to the County Court in which cause the State's Attorney entered a *nolle prosequi* and then filed an information against said Eastman for the same offences, and afterwards entered a *nolle prosequi* as to that information. The Referree disallowed said charge on the facts above stated.

Whereupon the defendant excepted to the report in relation to the item of account disputed, in as much as the referee after due proof of the same compelled the defendent contrary to his consent to disclose the facts detailed in his report, and in drawing his conclusion from those facts that the defendant was not entitled to recover for said item, although the performance of the services therein

named at the request of said Eastman was satisfactorily <span style="float:right">CALEDONIA, *March,* 1833.</span>
proved.

Upon a trial of the exceptions by the County Court they
were overruled. The defendant then filed exceptions to
this decision which were allowed and the cause carried
to the Supreme Court.

<span style="float:right">Mattocks.<br>vs.<br>Owen.</span>

*Argument for plaintiff.*—1st. It is objected that the cred-
itor ought not to have compelled defendant to testify to
circumstances relating to the disputed charge. The facts
disclosed were material; and clearly a party who offers
himself a witness shall have no right to recover upon the
truth half told, when a disinterested witness must tell the
whole truth.

2d. The charge was properly disallowed, because the
arrest by defendant and by his procurement was illegal
(Act of Congress Story's Edition, vol. I. p. 284,) there be-
ing no indictment nor affidavit of guilt, and all after pro-
ceedings while in custody was duress, and the contract
void.

3d. The case shews the criminal proceedings were with-
out probable cause, got up by defendant, to torture East-
man until his friends would buy him off by paying up his
debts, and the agreement to pay defendant for going to
New Hampshire was extorted from Eastman. In short
defendant was guilty of fraud, duress, and extortion.—
*King* vs. *Southerton*, 6 East. 134; 2 Skarkie, 431.

4th. The consideration of the promise was to compound
felony. It is apparent from the case that defendant was
to drop the prosecution, if the bank debt was sued. At
least, that defendent knew that Eastman so understood it
and if so, defendant was bound to do so. And if he intend-
ed so to do, it was a fraud upon the public; if he did not
intend to discharge Eastman, it was a fraud upon him.

5th. Part of the object of the journey was to solicit pay
for bringing Eastman from New York in irons with no le-
gal authority. If he had received the money for this it
would be recovered back. This part of the condition be-
ing bad, it destroys the whole. 1 Dane, 92.

*Argument for defendant.*—The leading objection to the
report and acceptance thereof, is that a witness is not com-

CALEDONIA,
March,
1833.

Mattocks
*vs*
Owen.

pellable to testify to facts *tending* to subject him to criminal prosecution *even* for a fine only. This is well established by all authors on the subject.—Phillips, 205, to 208 and notes.

That the facts disclosed tend to subject Owen to a *fine* and perhaps imprisonment, there can be no doubt.—4 Black. 218. Will it be contended though a common witness is thus protected, a party who voluntarily testifies in his own cause is not? The reason for protection, is the same to avoid indictment; otherwise the statute to testify in his own cause is in a measure defeated. The law as to common witnesses was well known, when the statute admitting the party to testify passed, and as no exception is made, none can be presumed.

A Court of Chancery thus protects a party.—Foublanque, p. 710, 716, 717.

And a party in an action on account in Book, especially on cross examination, stands in the same situation as a defendant in Chancery disclosing for the benefit of the opposite party.

In relation to the legality of the charge it may be observed, that, Owen had ceased to participate in the supposed duresse of Eastman when he left him at Cambridge. When he met him again at Irasburgh, he was in the lawful custody of Fisk, deputy sheriff under the warrant.— Fisk was bound to surrender him up for trial as he afterwards did. · Therefore when Eastman made the contract, to pay for the journey, he was not under duresse by *Owen*.

It is well settled Law that if a debtor is arrested by breaking his house, the suit will not abate. E. W. Judd's case in 1800. Trespass will lie for breaking house and perhaps case, but not *trespass* for the arrest.

So of witness arrested while privileged, process does not abate.—5 Dane. 586. *Cameron* vs. *Lightfoot*, 2 Black. 1190, *Fletcher* vs. *Baxter*, 2 Aiken, 231.

The opinion of the Court was delivered by *Williams J.* The question in the case is whether the referee decided correctly in disallowing a charge of twenty-five dollars which the defendant made against Eastman, the payee of the note on which the suit was brought.

In the first place it is very questionable whether the

CALEDONIA,
*March,*
1833.

Mattocks
*vs.*
Owen.

report should have been set aside if the referee was mistaken in his view of the law in relation to requiring the defendant to disclose the facts on which the decision was made.

There is however no doubt but what the referee decided correctly. Either the whole testimony of the defendant should have been disregarded, in which case the charge was wholly unsupported, or the whole was to be received and the decision to be made on the facts disclosed by him. It appears that the defendant made the charge against Eastman and endeavoured to support it by his own oath—It was optional with him whether to bring forward the account and swear to it himself, or not—he was not compellable to do so, if answering all the material questions in relation to the charge might subject him to a criminal prosecution, but he could not bring forward this charge and support it by testifying to part of the transaction and refuse to answer questions in relation to the other part. In the case of *Dandridge* vs. *Corden*, 3 Car & Payne, 11 a witness was called to prove that a bill had been accepted for a valuable consideration who answered that it was, but declined stating what the consideration was, as it might subject him to a *qui tam* prosecution—Lord Tenterden declared that he would not compel the witness to answer to the question put in relation to the consideration, but if he did not state what the consideration was, it would stand as if there was no consideration at all. In the case of *Dixon* vs. *Vale* et al. 1 Car & Payne, 278, Chief Justice Best laid down this rule, that if a witness being cautioned that he is not obliged to answer a quetions which may criminate him, chooses to answer it; he cannot afterwards object to answer any further questions in relation to that transaction on the ground that it might criminate him but must answer all questions relative thereto.

The same question was also decided by Lord Tenterden in the case of *East* vs. *Chapman* reported in 1 Car & Payne 570 and Moody and Malkin 46.

There is no doubt but what the referee was right in requiring Mr. Owen to relate all the circumstances connected with this charge of twenty five dollars, if he attempted to support the same by his own oath—

CALEDONIA,
March,
1833.

Mattocks
vs.
Owen.

But further it may be remarked that even if the view of the referee, on the question before mentioned had been evidently wrong, it would have furnished no ground for setting aside the report.—If Mr. Owen submitted to the decision of the referee and gave a relation of all the facts connected with the charge, the referee, could do no otherwise than to consider them as true, in making his final decision thereon.—His relation was entitled to credit as an admission of facts by the party in interest, and it certainly was no less entitled to credit because it was made by him unwillingly and on oath.

It only remains to consider whether the referee mistook the law in rejecting that charge on the facts which were before him; and we are very decidedly of opinion that the defendant had no claim for that sum of Mr. Eastman. Mr. Eastman was illegally taken from the State of New-York, and the defendant was guilty of false imprisonment in arresting him there. This illegal detention was continued up to the time that the defendant undertook to go to New-Hampshire to procure his brothers to assist in releasing him from that imprisonment, and one object of that journey was to enable the defendant to obtain pay for his time and expenses in illegally bringing the plaintiff from the State of New-York. As an inducement to Mr. Eastman to employ the defendant to undertake that journey, the defendant stipulated to forbear on his part, any further prosecution of the plaintiff for the fictitious and pretended felony that he had procured to be charged against him. The defendant had neither a moral nor legal right to any compensation for a service thus undertaken either at the suggestion of himself or Dr. Adams, or both for the purpose of procuring the discharge of Eastman from his imprisonment, and for the purpose of paying the defendant for his trouble and expense in the illegal and unjustifiable act of taking Mr. Eastman from the State of New-York, and carrying him to Irasburgh—

Any sum which Mr. Eastman might have paid either to Owen or any one else to procure his discharge from that imprisonment would have added to the damages which he sustained by that illegal detention; and we surely would not permit Mr. Owen to recover a sum of money which the

Jury would have been under obligation to regard as damages sustained by Mr. Eastman in an action of false imprisonment brought by him against Mr. Owen.

The Judgment of the County Court is therefore affirmed.

*Mr. J. Mattocks*, for plaintiff,
*Mr. W. Mattocks*, for defendant.